MARTIN et al. v. BODOVITZ.

No. 30959. Oct. 31, 1944.

Rehearing Denied Dec. 12, 1944.

*153 P. 2d 825.*

H. A. Ledbetter and R. H. Brett, both of Ardmore, for plaintiffs in error.

Champion & Fischl, of Ardmore, for defendant in error.

BAYLESS, J. This action was commenced in the district court of Carter county by Felix A. Bodovitz against Rupert E. Martin and the board of county commissioners of Carter county, Okla., and Roy Holliman, county treasurer of Carter county, Okla., to cancel a resale tax deed and to quiet title to 40 acres of land. The parties will be referred to herein by their trial court designation.

The plaintiff alleged that he was the owner and in possession of the N.W.¼ of the S.W.¼ of section 32, township 5 south, range 2 east, containing 40 acres more or less; that the defendant Martin claimed some right, title, or interest in and to said described property under and by virtue of a resale tax deed

issued to him by the defendant county treasurer on the 19th day of May, 1941; that said resale tax deed is void for the reason that, through his agent, he had tendered to the county treasurer a sum of money sufficient to pay the amount of taxes necessary to be paid at the time in order to take said property out of the resale and to pay the taxes up to date; that the sum so tendered and paid was the amount which said county treasurer advised him, through his agent, was sufficient to pay all of said taxes; that he paid said sum of money in the belief that it was sufficient to pay the taxes on all of his land, including the land involved herein; that through inadvertence and mistake the defendant county treasurer failed to include the 40 acres involved in this action in the tax receipts; that the county treasurer advised him through his agent that such receipts covered all the land owned by the plaintiff and that he relied upon such statement. He tendered into court the amount of money necessary to pay the taxes on the land involved and to redeem same from the tax sale. He prayed that the court determine the amount of money necessary to redeem said land from the tax sale; that he be permitted to redeem his land; that the deed to the defendant Martin be canceled as a cloud upon his title, and his title be quieted.

As a second cause of action he alleged that the defendant Martin bid said land in for a sum greater than the taxes due, and that the court should permit him to redeem the land for the amount of the taxes, penalties, and interest due; that the court should adjust the equities between the plaintiff and the defendants, Martin, Carter county and the county treasurer.

In his answer the defendant Martin alleged that he claimed title to said land by virtue of the resale tax deed; that by reason thereof he was vested with a paramount title superior to any right, title, or interest in and to said land which the plaintiff might have had prior to the execution of said resale tax deed; that he was entitled to have his title quieted.

The answer of the board of county commissioners and the county treasurer was in the nature of a general denial.

J. A. Bodovitz, in behalf of the plaintiff, testified that he was the father of the plaintiff; that he took care of various tracts of land located in Carter county, some of which were owned by himself, some by the plaintiff, and some by his other son, V. J. Bodovitz; that between them they owned 20 to 30 tracts of land; that the plaintiff was the owner of the 40 acres involved in this action; that he had obtained title thereto in 1936; however, the deed was not recorded until about the time this action was filed; that he had listed said 40 acres for taxes; that during the month of April, 1941, he took his land record book, containing the description of each tract, including this 40-acre tract, to the county treasurer, who transcribed same by typewriter; that the county treasurer advised him he would write up the tax receipts and advise him the amount due; that the next day the county treasurer advised him by letter that the tax receipts were ready, and also gave him the amount necessary to be paid; that he went to the county treasurer's office, paid the amount requested, and picked up the tax receipts; that he had been advised by his attorney that the 40 acres involved herein was being advertised for resale; that on this account he particularly inquired of the treasurer whether this 40 acres was advertised for resale, and the treasurer assured him "that was a mistake, that was lake property"; that he did not check the tax receipts delivered to him by the treasurer because he was advised by the treasurer that said treasurer had delivered to him receipts for all of the property which was described in the book and list made, including the 40 acres in question; that he did not undertake an independent investigation of the tax rolls himself to see whether the treasurer had omitted to calculate the taxes due on any property he had described to the county treasurer; and that he relied wholly upon the county treasurer to correctly perform his duties with respect to the col-

lection of taxes due on the property he described to the county treasurer, including the 40 acres. He testified that he gave the treasurer a check to cover the taxes on all of the land.

The county treasurer testified, and in some respects corroborated the testimony of Bodovitz; in other respects he was uncertain and did not have the clear recollection of many of the details that Mr. Bodovitz had, but in no respect did he contradict Mr. Bodovitz. Since this was simply one of many tax payments he handled in the routine of his office, it easily can be seen why his evidence would be as just characterized, and his attitude was fair to all concerned.

The trial resulted in a judgment in favor of the plaintiff. The court ordered that the defendant Martin be reimbursed in the sum of $250; that the plaintiff pay the said Martin the sum of $79.60, being the amount of taxes, penalties, and costs; that the county treasurer refund to the said Martin the sum of $170.40, being the excess bid by Martin for said land above the taxes due.

The sole contention made here by the defendant is "that there was a total failure of proof of the allegations contained in plaintiff's petition."

Plaintiff contends that the findings and judgment of a trial court in an action of equitable cognizance should not be overturned unless clearly against the weight of the evidence. The evidence, he says, amply supports the instant judgment and promotes justice.

We have held that where a taxpayer tenders to the county treasurer sufficient funds with which to redeem his land from all tax sales and informs such officer that he desires to redeem a particular tract of land from a tax sale, the taxpayer has done all the law requires of him in paying his taxes. If, under such circumstances, some or all of the taxes due are not paid by reason of the mistake or carelessness of the county treasurer, or his deputy, in calculating the taxes due, the taxpayer is entitled

in an action brought for that purpose to have a tax deed set aside, if his evidence clearly shows that the taxes due, or any part thereof, were not paid by reason solely of the mistake, omission, negligence, or fraud of the county treasurer or his deputy. See Grimes v. Carter, 185 Okla. 469, 94 P. 2d 544. See, also, Stamper v. Schwartz, 191 Okla. 308, 129 P. 2d 587, Headley v. Hall, 191 Okla. 352, 129 P. 2d 1018, and the cases cited therein.

We are of the opinion that the evidence introduced by the plaintiff in this case is clear and adequate to sustain his position under the rule announced in the above cases. As stated above, the main contention of the plaintiffs in error is that the evidence is insufficient when viewed in the light of the rule by which judgments in equitable actions are viewed on appeal. Under this rule we are not authorized to reverse a judgment rendered in an equitable action unless we can say that such judgment is clearly against the weight of the evidence. We cannot say that of this judgment. Therefore, the judgment of the trial court is affirmed.

CORN, C.J., GIBSON, V.C.J., and OSBORN, HURST, and DAVISON, JJ., concur. ARNOLD, J., specially concurring.

---

ARNOLD, J. (concurring specially). This case cannot be affirmed on the conclusive facts in the record on the theory of the majority opinion. The pertinent facts are undisputed. They are: J. A. Bodovitz is the father of V.J. and Felix A. Bodovitz. They owned 25 to 40 pieces of property in Carter county, and J. A. managed the property, rendered all the assessments and paid all the taxes. The particular 40-acre tract involved in this controversy was deeded to the plaintiff, Felix A. Bodovitz, in 1936, but this tract of land was never returned for taxation nor the deed thereto recorded by Bodovitz until April, 1941. J. A. Bodovitz went to the county treasurer's office and had the owner's name, Felix A. Bodovitz, indorsed on the assessment roll. Imme-

diately thereafter he went to the treasurer's office and submitted to him a large list of various tracts of land and descriptions thereof, including the 40-acre tract in question, and proposed to pay the taxes due thereon. It was suggested by the county treasurer to Bodovitz that receipts be prepared with the understanding that Bodovitz would be notified when the receipts were ready for delivery. The county treasurer, in some manner, took the various descriptions down, prepared the receipts, and on the following day notified Bodovitz by letter that the receipts were ready for delivery. Bodovitz returned to the county treasurer's office the next day after receipt of notification, and delivered to the county treasurer a check for the aggregate amount of the receipts. The receipts were delivered to him. He did not examine the receipts and assigned as reason therefor that he trusted the statement of the county treasurer that receipts were issued and delivered to him for all the taxes that he owed. Bodovitz, having received information that the 40-acre tract was advertised for resale, made inquiry of the county treasurer whether this tract of land was included in the resale then advertised. The county treasurer told him that this tract of land was not advertised for resale; that the tract of land which he had in mind was lake property. The county treasurer checked the various pieces of property described to him against the ownership rolls of his office and did not issue a receipt on any tract of land among the list furnished unless Bodovitz appeared as the owner. A receipt was not issued describing the 40-acre tract because a Bodovitz did not appear by the records of the county treasurer's office to be the owner.

The statement of the county treasurer to Bodovitz that the 40-acre tract in question was not on resale is immaterial here. This is in no wise tantamount to a statement that no taxes were due on the tract.

Unquestionably the county treasurer was incorrect in his statement to Bodovitz that receipts had been issued for all the taxes that he owed. Likewise it is unquestionably true that Bodovitz knew that he was the owner of the 40-acre tract, had never returned it for taxation, had never paid any taxes thereon, and that taxes were due and delinquent on this tract of land. While it is the duty of a county treasurer to impart correct information to tax-paying inquirers, it is likewise the duty of a taxpayer to exercise reasonable and available means of checking the correctness of information furnished by such officer in respect to taxes due, and, ordinarily, a taxpayer who fails to exercise such care is guilty of negligence. If such negligence contributes to his failure to pay taxes due and the property goes to resale by reason thereof, no cause of action is available to the taxpayer to set the resale aside and cancel the tax deed issued in pursuance thereof on the ground of mistake, negligence, fraud or omission of the county treasurer in calculating the taxes due.

If Bodovitz, in view of his undisputed knowledge of the tax burden status of his property, had examined the receipts furnished him, he would have discovered the mistake of the county treasurer. Reasonable inquiry thereafter would have disclosed the reason for the mistake as hereinbefore indicated. Discovery of the mistake would have disclosed to Bodovitz that he still owed the taxes due on this tract. After such discovery he would have no right to rely upon any misinformation theretofore furnished him by the county treasurer. The rule is well stated in 61 C. J., page 1290, in the following language:

". . . To enable an owner to claim the right to redeem on this ground, however, it must appear that the fault or mistake was exclusively that of the officer, unmixed with any mistake or negligence on the part of the owner himself, and he cannot by his own neglect make it the duty of the officer to furnish him with the required information a second time."

A fact situation very similar to the one before us was treated by the Wisconsin Supreme Court in Menasha Wooden Ware Co. v. Harmon, 128 Wis.

177, 107 N.W. 299. In the body of the opinion, at page 300, it was said:

"It is contended that the court erred in holding that there was a constructive redemption from the sale of 1880, upon the ground that the evidence is clear that the failure to redeem from this sale is directly attributable to the fault and neglect of Mr. Washburn in his attempt, as agent of the trustee and the beneficiaries, to redeem from all outstanding tax sales and deeds. From the facts above stated, it is clear and without dispute that Mr. Washburn had sole and full charge of the business of the redemption of these lands from the tax sales. He had personal knowledge of the fact that no taxes had been paid by or for him for some years immediately preceding the trust deed, and that tax deeds had issued on tax certificates. He procured an abstract of title to this land shortly before he attempted to redeem, and this abstract contained a statement of the tax sale of 1880 and that a tax deed had issued thereon. In his request to the clerk for the amount due for unpaid taxes he included the description in question with others, without specifying the years for which the lands had been sold for taxes. The statement furnished by the clerk included no sale prior to 1883. Washburn made no examination of this statement, nor comparison of it with the abstract in his possession, to ascertain whether it covered and included all unpaid taxes and sales. He likewise omitted to so examine and compare the redemption receipt issued after payment of the amount specified in the clerk's statement; and he at no time, until the time for redemption had expired, specifically brought to the attention of the county clerk the fact that there had been a sale of this land for taxes in 1880. It is manifest that, had he done so, the record of such sale would readily have been discovered in the records of the clerk's office. Under these facts and circumstances it seems obvious that the failure to redeem from the sale of 1880 was fully as much due to the fault and neglect of Mr. Washburn as of the county clerk, and it cannot be said that such failure is wholly attributable to the mistake and negligence of the clerk. Mr. Washburn had personal knowledge that the taxes had not been paid from a time antedating the trust deed up to the time when the clerk furnished this statement. Furthermore, had he examined the list furnished him, or the redemption receipt, or compared them with this abstract, he would have discovered the omission and thereby have obviated all liability of a failure to redeem from this sale. This conduct established the failure to redeem as attributable to the neglect of the redemptioners. Under such circumstances the consequences of such neglect are to be borne by the defendant, upon the ground that 'the case presents no other ground of equity than would exist in any case where, through inadvertence or misapprehension, the party has failed to assert his right in due season; and he will be left by the law where his own negligence or inattention has placed him.' "

The facts in this case do not bring it within the rule laid down by the cases cited by the majority.

Was Bodovitz negligent under all of the circumstances of this case? If he acted as an ordinary prudent person would have acted in failing to examine the receipts in his possession, then he could correctly take the position that he was not negligent but lulled into a false sense of security by the assurance of the county treasurer that he possessed receipts for all the taxes he owed and would be excused for failure to discover the incorrectness of the county treasurer's statement to him. The record does not directly disclose on what theory the trial court rendered its judgment. However this may be, the judgment of the trial court will not be set aside by us on appeal unless its judgment is clearly against the weight of the evidence and the reasonable inferences to be drawn therefrom. The judgment of the trial court in a case of equitable cognizance will be affirmed if sustainable under any legal theory on the facts presented. Indulging the presumption that the trial court was of the opinion that Bodovitz was not negligent in failing to avail himself of the means at hand, which would have disclosed the mistake of the county treasurer, I think the judgment of the trial court should be affirmed.