In re OKLAHOMA PRESS PUB. CO.'S TAXES.

No. 32997.   March 23, 1948.

Rehearing Denied May 4, 1948.

*192 P. 2d 1011.*

C. W. King and R. F. Barry, both of Oklahoma City, for plaintiff in error.

W. R. Banker and A. Camp Bonds, both of Muskogee, for defendant in error.

RILEY, J. This is an appeal by the county assessor of Muskogee county from the judgment of the district court growing out of the assessment of property of Oklahoma Press Publishing Company, a corporation, for the year 1946.

On March 12, 1946, the Publishing Company delivered to the county assessor what it considered its corporate assessment return for the year 1946. It was made on one of the forms prescribed by the Oklahoma Tax Commission, known as Form No. 901-R. Therein its personal property was described and set forth in four separate items of the total value of $13,914.95. The statement, or return, so delivered gave

none of the information called for by the second paragraph of 68 O.S. 1941 §15.14 with respect to the authorized capital stock of the corporation, its outstanding bonded or other indebtedness, etc. It did not include a copy of all lists or schedules of property filed in every other county of this state.

For the information called for in said second paragraph of section 15.14, supra, the Oklahoma Tax Commission had prepared and furnished another form, designated as Form 900-R.

On March 22, 1946, the county assessor, by mail, returned the list to the Publishing Company, together with a letter informing the company that he was rejecting the same for the reason that it was not accompanied by O.T.C. Form 900-R, and further stating:

"I am hereby requesting that you file your return on the enclosed O.T.C. Form 900-R, as well as 901-R, as prescribed by the Oklahoma Tax Commission in compliance with Title 68, Sec. 15.14, and Section 15.15, of the Oklahoma Statutes 1941, on or before 10 days from the date of your receipt of this notice."

On March 26, 1946, the Company wrote the assessor as follows:

"Your letter of March 22nd, returning our rendition of personal property, which we made and mailed to you under registered mail prior to March 15th, has been received.

"We note that you request that we file an additional return within ten days, from receipt of your letter, and we regret that this we are unable to do.

"Mr. Bixby is out of the city, in fact, he is out of the country, and we do not expect him back until after the 1st of May. There is no one else in the organization who is authorized to make the return you request.

"Mr. Bixby made it a point to file the return before he left the city, fully expecting it to take care of the tax situation until his return."

No amended or additional return having been made, the county assessor,

on or about April 10, 1946, made his own assessment and increased the valuation of the personal property to $42,895, and added a penalty thereto of an additional valuation of $4,290. Thereafter, on or about April 17, 1946, the Publishing Company filed its protest with the county board of equalization protesting both the raise in valuation of the personal property and the assessment of the penalty, and prayed for the cancellation of said penalty.

Hearing was had before the board of equalization on May 2, 1946, resulting in an order as shown by the minutes of the board, as follows:

"Motion by J. T. Purcell, seconded by Coy Harrison, which motion carried unanimously, that the assessed valuation of personal property tax on the Oklahoma Press Publishing Company be fixed by the equalization Board at $38,608.00 valuation for the year 1946-47. To which the County Assessor, Carl Pate, enters his exceptions and gives notice of appeal".

The board of equalization apparently made a further order canceling the penalty theretofore imposed by the county assessor, but that is not specifically shown by the minutes of the board nor elsewhere in the record except from the testimony of the deputy county assessor.

The county assessor appealed to the district court and asked that the penalty be restored. Hearing was there had November 13, 1946, resulting in a finding of the issues in favor of the Publishing Company and a judgment or order denying the application of the county assessor to have the penalty restored and dismissing the appeal; and the county assessor appeals.

There is no question as to the valuation of $38,608 placed upon the personal property by the county board of equalization. The Publishing Company did not appeal from that order and the valuation of $38,608 must stand. The question is whether the Publishing Company was subject to any penalty.

The trial court held:

"After hearing the evidence and the argument of counsel it is the view of the court that the taxpayer in this case filed a sufficient return to comply with the law and avoid the penalty against the taxpayer for refusal to make such return. . . . It being the view of the court that sufficient return being made to avoid the assessment of penalty, by the county assessor, that the prayer of the appellant to reinstate the penalty should be denied, and to which the appellant excepts."

The judgment was:

"It is therefore ordered and adjudged by the court that for reasons hereinbefore stated, the prayer of the appellant to reinstate the penalty denied and cancelled by the county equalization board should and is hereby denied, and the appeal of the county assessor is dismissed."

There are two sections in Title 68 O.S. 1941 under which a penalty in the way of an increase of the assessed valuation of property is imposed. 68 O.S. 1941 §15.12, prior to the amendment thereof by 68 O.S.A. §15.12, O.S. 1947 Supp., S.L. 1945, p. 253, §1, provided that if any taxpayer failed to list his personal property as therein provided, on or before March 1st, a penalty of $1 was to be added to his tax and entered upon the tax rolls, and if the personal property was not listed on or before May 1st, an additional penalty of 10% of the value of such property was to be added, and if the county assessor failed to add such penalty of $1 and 10% to the assessed valuation of the property, he was liable on his official bond, for such penalty.

But, by said section as amended in 1945, supra, the time for listing so as to avoid the $1 penalty was extended to March 15th and the additional penalty of 10% of the valuation of the property was made mandatory if such property is listed after March 15th but on or before April 15th, and if listed after April 15, the additional penalty is 20%.

294

In the instant case, the Publishing Company did list its personal property before March 15, 1946. Although the return, or listing, did not give all the information called for by the statute on the forms prescribed by the Oklahoma Tax Commission, we think it sufficient to avoid the penalty. Therefore, no penalty could be lawfully imposed under 68 O.S. 1941 §15.12, as amended in 1945.

But, under 68 O.S. 1941 §15.14, all corporations organized, existing, or doing business in this state, other than railroad and public service corporations and other than national banks, state banks, trust companies, and building and loan associations, shall, on or before March 1st of each year, return sworn lists of their taxable property within each county, and in such lists, all corporations must itemize their property in the same manner and to the same extent as is required of railroad or public service corporations. It is the duty of all such corporations to make, under oath, and deliver to the county assessor of the county in which its principal business is transacted, a statement, on form prescribed by the Oklahoma Tax Commission, of its authorized capital stock and the amount thereof paid up, the amount of its outstanding bonded or other indebtedness, the total amount of its invested capital within and without Oklahoma, and such other financial information as may be deemed necessary to enable the county assessor to determine the value of the monied capital of any such corporation; and it is also made the duty of such corporation to deliver to the county assessor of the county in which its principal business is located, a copy of all lists or schedules of property filed in every other county.

68 O.S. 1941 §15.15 provides that it shall also be the duty of each taxpayer, upon written request of the county assessor of any county, to furnish, under oath, a written statement showing the amount invested in any plant, equipment, stock of merchandise or material, or any other species of property located in such county, and any other information which may be reasonably deemed necessary to assess the property of such taxpayer on a fair and just parity with the property of other taxpayers; and in any case where such written statement is requested, the taxpayer shall have ten days from the receipt of the written request within which to prepare and furnish such statement.

Said section 15.15 further provides:

"Should any taxpayer neglect, fail or refuse to make a proper itemization of his property in any county, or neglect, fail or refuse to furnish any other information required by this Section, or the preceding Section, it shall be the duty of the County Assessor or the County Board of Equalization to ascertain, from the best information obtainable, the value of the property of such taxpayer, and as a penalty, shall add ten percentum (10%) of the value thereof so ascertained, provided that the penalty shall not be applied until the taxpayer shall have had ten days notice of the intention to apply the penalty and an opportunity to be heard."

In Grubb v. Johnson Oil Refg. Co., 198 Okla. 433, 179 P. 2d 688, it is said: "By its plain language, the penalty imposed by section 15.12 is applicable to all taxpayers who, like plaintiff, are required to list their property with the county assessor". The penalty is for failure to file any list at all, and not for filing a defective list. Therefore, no penalty could be lawfully imposed under section 15.12.

The county assessor contends that 68 O.S. 1941 §§15.14 and 15.15 are the applicable statutes and that thereunder the 10% penalty imposed by section 15.15 was properly added, and that the county board of equalization was without authority of law to cancel said penalty although it was clothed with power to fix the assessable value of the personal property of the Publishing Company. If the penalty was lawfully added by the county assessor, the

county board of equalization was without power or authority to cancel the same, if it did in fact so do.

In the Grubb case, supra, it is said that 68 O.S. 1941 §15.40, which defines the power and authority of the county boards of equalization, does not authorize the board to set aside or annul the penalty provided by section 15.12 after the same has been imposed by the county assessor.

68 O.S. 1941 §15.41 defines and sets forth the power and authority of the county board of equalization in a hearing upon a protest presented by a taxpayer, and its power is limited to confirming, correcting, or adjusting the valuation of the property of the taxpayer. It is not given power or authority to cancel any penalty imposed by law and added by the county assessor.

But it does not follow that the penalty was properly and lawfully added by the county assessor in this case. As set forth above, no penalty is imposed by section 15.14. That section merely states what information corporations, other than railroad, public service corporations, etc., shall furnish and how and when it must be furnished. Section 15.15, supra, also calls for certain information to be furnished by any taxpayer upon the written request of the county assessor or board of equalization, and gives the taxpayer ten days from receipt of the written request to prepare and furnish the information called for under that section. Then comes the provision imposing the penalty under section 15.15. It is applicable alike to all taxpayers who neglect, fail, or refuse to make a proper itemized statement of their property in any county, or who neglect, fail, or refuse to furnish any other information required by section 15.15 or section 15.14, in which case it then becomes the duty of the county assessor, or the county board of equalization, to ascertain from the best information obtainable, the value of the property of such taxpayer, and as a penalty, add 10% of the value so ascertained, but with the provision that "the penalty shall not be applied until the taxpayer shall have had ten days notice of the intention to apply the penalty and an opportunity to be heard."

It is clear that the penalty may be applied only after the taxpayer shall have had ten days' notice of the intention to apply the penalty. This does not mean ten days after request for the information has been made.

In the instant case, the county assessor made due request for the information called for by sections 15.14 and 15.15 and the Publishing Company was clearly liable for the penalty, but not until the ten days' statutory notice of intention to apply the penalty had been given. The ten-day request for the information and failure to comply, alone, were not sufficient to justify application of the penalty. The record does not show such notice. Therefore, the county assessor was without authority of law to impose the penalty in the first instance at the time he did so, or at any time. Since the penalty was not lawfully imposed, there was no error in refusing to reinstate the same.

Affirmed.